THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

SHELLY STEVENS, *et al.*      *

   Plaintiffs,       *

v.             *      Civil Case No. 19-cv-03368-JMC

HOLLER, *et al.*        *

   Defendants       *

   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *

## MEMORANDUM

This suit arises out of James Leslie Stevens' ("Mr. Stevens" or "Decedent") unfortunate death, which occurred one day after he was released from the Allegany County Detention Center ("ACDC" or the "Detention Center"). (ECF No. 71 ¶ 158–60). Suit is brought by his estate and his surviving spouse ("Plaintiffs"). The parties consented to proceed before a Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Local Rule 301.4. (ECF No. 60). On May 6, 2020, Plaintiffs filed a Second Amended Complaint. (ECF No. 71). Now pending before the Court is a Motion to Dismiss (ECF No. 72) filed by Dawn M. Holler, Stephanie D. Shroyer, Donald Frederick Manger, Leslie A. Logsdon, James A. Piazza, Lisa R. Shutts, Jodi L. Brashear ("Individual Defendants"), and Wellpath, LLC ("Wellpath") (collectively "Medical Defendants").[1] Plaintiffs filed an Opposition, and the Medical Defendants filed a Reply. (ECF Nos. 73 & 76). For the reasons outlined below, the Medical Defendants' Motion to Dismiss is **GRANTED** as to Counts I–IV, alleging constitutional violations, and the Court declines to exercise supplemental jurisdiction over

---

[1] Defendant Wellpath, LLC, which was known as Correct Care Solutions ("CCS") at the time of the events at issue here, is a limited liability company contracted to provide medical care services to inmates at the Allegany County Detention Center. (ECF No. 71 ¶ 5). In the interest of clarity, the Court will refer to this entity as Defendant CCS, as Plaintiffs have done within the Second Amended Complaint.

Counts V–VII, the remaining state tort law claims.   Although Counts V, VI and VII are also dismissed, they may be refiled in the appropriate state court within thirty (30) days from the date of the accompanying order.

## I.   **FACTS**

The relevant factual allegations contained are summarized within this Court's previous Opinion.  (ECF No. 69).  In that decision, this Court granted the Motion to Dismiss filed by the Allegany County Government Defendants. (ECF No. 70).  The Medical Defendants did not join in that motion.  Though the Court afforded Plaintiffs the opportunity to amend their Complaint to address the deficiencies outlined by the Court as to the Allegany County Government Defendants, they did not do so, but instead made certain amendments as to the Medical Defendants only.  (ECF No. 71).  Accordingly, this section of facts is limited to those allegations that are new to the Second Amended Complaint.

Plaintiffs provide the Court with information about CCS' litigation based on care rendered to inmates and detainees at other facilities, including its "long and troubled history of failing to ensure that its employees call for hospitalizations or provide necessary medical care in the face of medical emergencies."  (ECF No. 71 ¶ 108–14).  As of October 2018, CCS had been party to over 1,400 lawsuits "arising out of its provision of inadequate medical care and failures to properly respond to and treat inmates' conditions."  *Id*. ¶ 109.  Plaintiffs also mention that according to CNN "between 2014 and 2018, the four-year period of time surrounding Mr. Stevens' death, over one-third of the cases brought against Correct Care Solutions for inadequate medical care involved the untimely death of an inmate.  And Correct Care Solutions reportedly settled approximately 100 cases during that window of time."  *Id*. ¶ 110.  Plaintiffs incorporate eleven specific cases[2] in their

---

[2] Although Plaintiffs provide specific facts from these cases, no pertinent data is included, such as case number, or Court.

Second Amended Complaint to provide "pertinent examples of Correct Care Solutions' and/or its employees' failure to provide adequate medical care, respond to medical emergencies or treat serious conditions similar to those presented by Mr. Stevens, or prevent unnecessary inmate deaths . . . ." *Id.* ¶ 111.   Plaintiffs do not assert that any of these other cases involved ACDC or the individual health care providers involved in Mr. Stevens' case.

Plaintiffs contend that CCS, despite knowing that some of its employees at other facilities were persistently accused of the same kind of medical malpractice and negligence, and that those actions and omissions purportedly led to at least 70 inmate deaths before and immediately after Mr. Stevens' detention, took no action to ensure that hospitalizations would occur when necessary, to ensure staff was properly trained on how to respond to a medical emergency; or to ensure that medical doctors would always be available for in-person visits at the facility. *Id.* ¶ 114.  To the contrary, Plaintiffs argue that CCS "continued to tout to counties and municipalities that it was the best vendor for medical services because it provides in-house care in a cost-effective manner." *Id.*

Plaintiffs assert that, consistent with the pattern outlined above, Mr. Stevens never received emergency care during his time at the Detention Center. *Id.* ¶ 115.  Rather, Mr. Stevens remained at the facility for four days. *Id.*  Upon admittance to ACDC, Mr. Stevens was 44 years old and had many serious medical disabilities. *Id.* ¶ 24.  Mr. Stevens weighed approximately 375 pounds and had a history of congestive heart failure, chronic systolic hypertension (high blood pressure), asthma, sleep apnea, low testosterone, neuropathy, and diabetes mellitus. *Id.*  Mr. Stevens was also insulin-and oxygen-dependent and wore compression stockings. *Id.*  He was prescribed and taking a host of medication to treat or manage his health conditions. *Id.*  Mr. Stevens also reported that he drank alcohol and was a heavy smoker, and that he used oxycodone and heroin regularly,

as well as benzodiazepines when opiates were unavailable.  *Id.* ¶ 32.  He had last used drugs on Thanksgiving, November 24, 2016, the day prior to reporting to ACDC.  *Id.* ¶ 32.

Notwithstanding his "comorbid medical conditions and recent injury, Mr. Stevens was in stable health at the time of his surrender."  *Id.* ¶ 27.  Mr. Stevens was received into custody at 1:41 a.m. on November 25, 2016.  *Id.* ¶ 29.  At the time of intake, his "pulse and respiration rates, temperature, and oxygen saturation were normal," and he indicated a six out of ten on a pain scale, which is one level above "moderate pain."  *Id.* ¶ 35–36.  Mr. Stevens' systolic blood pressure was "extremely high upon intake," at 185 over a diastolic blood pressure of 100.  *Id.* ¶ 38.  According to Plaintiffs, this same day, a "medical crisis" emerged, and it became acutely dangerous in the early morning of November 26 and persisted until his release and ultimately led to Mr. Stevens' death.  *Id*. ¶ 115.

## II.   <u>STANDARD OF REVIEW</u>

The Medical Defendants move to dismiss pursuant to Rule 12(b)(6), under which Plaintiffs' pleadings are subject to dismissal if they "fail[] to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief and must state a "plausible claim for relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009) (recognizing "an unadorned, the-defendant-unlawfully-harmed-me accusation" does not state a plausible claim for relief).  A claim has facial plausibility when the plaintiff, "pleads factual content that allows the court to draw the reasonable inference that the [opposing party] is liable for the misconduct alleged."  *Id.* ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" (quoting *Bell Atlantic Corp*., v. *Twombly*, 550 U.S. 544, 555 (2007))).

4

At this stage, all well-pleaded allegations in a complaint must be considered as true, and all factual allegations must be construed in the light most favorable to the plaintiff. *See Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999). In evaluating the complaint, unsupported legal allegations need not be accepted. *Revene v. Charles Cty. Comm'rs*, 882 F.3d 870, 873 (4th Cir. 1989).

In resolving a motion under Rule 12(b)(6), a court considers matters only within the pleadings. If matters outside the pleadings are presented, and are considered, the motion shall be treated as one for summary judgment pursuant to Rule 56. *Humphrey v. Nat'l Flood Ins. Program*, 885 F. Supp. 133, 136 (D. Md. 1995). Under limited circumstances, however, when resolving a Rule 12(b)(6) motion, a court may consider documents beyond the complaint without converting the motion to dismiss to one for summary judgement. *Goldfarb v. Mayor & City Council*, 791 F.3d 500, 508 (4th Cir. 2005). In particular, a court may consider documents that are "explicitly incorporated into the complaint by reference and those attached to the complaint as exhibits." *Goines v. Valley Comm. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016) (internal citation omitted).

## III.  <u>ANALYSIS</u>

The Second Amended Complaint contains seven causes of action. *See* (ECF No. 71). Counts I, III, V, and VI are pleaded against the Individual Defendants and Counts II, IV, and VII are pleaded against Defendant CCS. Specifically, the claims are as follows:

Count I: Estate of James Stevens against the Individual Defendants, 42 U.S.C. § 1983;

Count II: Estate of James Stevens Against Wellpath, 42 U.S.C. § 1983 – *Monell* Claim;

Count III: Estate of James Stevens Against the Individual Defendants, Article 24 of the Maryland Declaration of Rights;

Count IV: Estate of James Stevens Against Wellpath, Article 24 of the Maryland Declaration of Rights – *Longtin* Claim;

Count V: Estates of James Stevens Against the Individual Defendants, Survival Action – Negligence;

Count VI: Plaintiff Shelly Stevens Against the Individual Defendants, Wrongful Death;

Count VII: Plaintiff Shelly Stevens and Estate of James Stevens Against Wellpath, Respondeat Superior Liability for Negligence and Wrongful Death Claims against Defendants Holler, Shroyer, Logsdon, Shutts, and Brashear

These claims are grouped and addressed in-turn.

## A. COUNT I — 42 U.S.C. § 1983

Section 1983 of Title 42 of the United States Code provides that a plaintiff may file suit against any person who, acting under color of state law "subjects or caused to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. *See Owens v. Balt. City State's Attorney's Office*, 767 F.3d 379 (4th Cir. 2014), *cert. denied*, 135 S. Ct. 1983 (2015). Notably, § 1983 itself "is not a source of substantive rights," but rather provides a "method for vindicating federal rights elsewhere conferred." *Albright v. Oliver*, 510 U.S. 266, 271 (1994). Therefore, the first step in considering a § 1983 claim is to pinpoint the specific right that has been infringed. *Safar v. Tingle*, 859 F.3d 241, 245 (4th Cir. 2017).

Plaintiffs contend that the Decedent's rights, as a pretrial detainee, were violated due to the Medical Defendants' failure to provide him with adequate medical care.[3]  (ECF No. 71 at 34, 164).

---

[3] See *Young v. City of Mt. Ranier*, 238 F.3d 567, 575 (4th Cir. 2001). The constitutional protections afforded to a pretrial detainee as provided by the Fourteenth Amendment are co-extensive with those provide by the Eighth Amendment. *Barnes v. Mary Christina*, 110 F. Supp. 3d 624, 629 (D. Md. 2015), *see also Sweitzer v. McGuinn*, No. GLR-17-1741, 2017 WL 4516711, at *8 (D. Md. Oct. 10, 2017) (noting, as a practical matter, the Court of Appeals for the Fourth Circuit does not distinguish between the Eighth and Fourteenth Amendments in the context of a pretrial detainee's civil rights claim).

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment." *De'Lonta v. Angelone*, 330 F.3d 630, 633 (4th Cir. 2003) (citing *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)). It is beyond debate that a "prison official's deliberate indifference to an inmate's serious medical needs constitutes cruel and unusual punishment under the Eighth Amendment." *Gordon v. Schilling*, 937 F.3d 348, 356 (4th Cir. 2019). To state a claim for denial of medical care, a plaintiff must demonstrate that the actions or omissions of the defendants amounted to "deliberate indifference" to a serious medical need. *Estelle v. Gamble,* 429 U.S. 97, 106 (1976).

To succeed on an Eighth Amendment deliberate indifference claim, the plaintiff "must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Lowe v. Johnson*, 797 Fed. App'x 791, 793 (4th Cir. 2020) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)) (internal quotation marks omitted). This "deprivation . . . must be, objectively, sufficiently serious; . . . the denial of the minimal civilized measure of life's necessities." *Id.* In addition to this objective seriousness, the "prison official must have a sufficiently culpable state of mind . . .. In prison-condition cases, that state of mind is one of deliberate indifference to inmate health or safety." *Id.* (internal quotation marks omitted). In sum, deliberate indifference to a "serious medical need requires proof that the prisoner plaintiff was suffering from a serious medical need (objective component) and that the prison staff were aware of the need for medical attention but failed to either provide it or ensure it was available (subjective component)." *Smith v. Rowe*, No. CCB-18-3195, 2020 U.S. Dist. LEXIS 49825, at *12–13 (D. Md. Mar. 23, 2020) (*citing Heyer v.*

*U.S. Bureau of Prisons*, 849 F.3d 202, 209–10 (4th Cir. 2017)), see also *Iko v. Shreve*, 535 F. 3d 225, 241–43 (4th Cir. 2013).

A "serious medical need" is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. *Heyer*, 849 F.3d at 210. With respect to the subjective considerations, "deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Farmer*, 511 U.S. at 836. "[T]o act recklessly in [this context,] a person must consciously disregar[d] a substantial risk of serious harm." *Id.* at 839 (internal quotation marks omitted). While the prisoner does not have to show the prison official "act[ed] or omi[tted to act] for the very purpose of causing harm or with knowledge that harm will result," the prisoner must show "more than mere negligence." *Id.* at 835. Indeed, "a prisoner does not enjoy a constitutional right to the treatment of his . . . choice" so long as the medical treatment provided is adequate. *De'lonta v. Johnson*, 708 F.3d 520, 526 (4th Cir. 2013).

*Plaintiffs Fail to Plead that the Individual Defendants had the requisite Subjective Knowledge*

The parties, seemingly, do not dispute that the Decedent's underlying health conditions satisfy the first prong of *Farmer,* as they were objectively serious.[4] As to the second prong, Plaintiffs allege that each of the Individual Defendants knew that Mr. Stevens had serious medical needs, specifically that he had:

 (a) heart disease, hypertension, asthma, diabetes, morbid obesity, and a history of drug use; (b) was experiencing multiple and sustained episodes of vomiting, sweating, feeling anxious, urinating on himself, and disorientation that were indicators of heart attack, sepsis, and/or withdrawal; (c) had unstable and wild fluctuating vital signs throughout his detention, including alarmingly high systolic blood pressure and respiration rates, and fluctuating oxygen saturation levels and

---

[4] *See also Iko*, 535 F.3d at 238 ("An injury is sufficiently serious . . . as long as it rises above the level of *de minimus* harm."), *Krell v. Queen Anne's Cty.*, No. CV JKB-18-0637, 2019 WL 6131076, at *2 (D. Md. Nov. 19, 2019) ("Chronic injuries that predate interactions with law enforcement are regularly held to constitute sufficiently serious medical needs, even if the injuries do not require 'urgent' medical attention.").

> pulse rates; (d) was in pain, (e) was at a greater risk of heart attack if not carefully monitored, accurately diagnosed, or given proper medical attention; and (f) could not be diagnosed or treated for a heart attack or sepsis at the Detention Center. (ECF No. 71 ¶ 167).

Further, Plaintiffs allege that Mr. Stevens' vomiting, disorientation, high blood pressure and respiration rates, uncontrolled urination, anxiety, and sweating were so obvious and persistent that a layperson would have recognized that Mr. Stevens was in crisis and needed emergency care. *Id.* ¶ 168.

Plaintiffs generalized claims that the Individual Defendants knew all of this, do not satisfy the subjective deliberate indifference standard for a variety of reasons. First, actual knowledge of the risk of harm to the inmate is required. *Montgomery v. Conmed, Inc.*, No. CV ELH-13-00930, 2016 WL 241738, at *10 (D. Md. Jan. 19, 2016), *aff'd*, 678 Fed App'x 95 (4th Cir. 2017). As the Court of Appeals for the Fourth Circuit has explained: "[a]ctual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Virginia Beach Correctional Ctr.*, 58 F.3d 101, 105 (4th Cir. 1995) (quoting *Farmer,* 511 U.S. at 844).

In addition to such knowledge, even if established, the officer must also have substantially "recognized that his actions" were insufficient to mitigate the risk of harm to the inmate. *Iko*, 535 F.3d at 241. This is because "[t]rue subjective recklessness requires knowledge both of the general risk, and *also that the conduct is inappropriate* in light of that risk." *Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997) (emphasis added). Stated another way, "it is not enough that an official *should* have known of a risk; he or she must have had actual subjective knowledge both of the inmate's serious medical condition and the excessive risk posed by the official's action or

inaction." *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014), see also *Gattuso v. CCS Medical Dep.*, No, CV TDC-18-3470, 2020 WL 488954, *4 (D. Md. Jan. 29, 2020) (applying the subjective and objective "traditional test").   Here, Plaintiffs acknowledge that none of the Individual Defendants "thought it necessary" to take the Decedent to the hospital, (ECF No. 71 ¶ 1), and thus the subjective standard for deliberate indifference cannot be satisfied.   See *Farmer*, 511 U.S. at 839–40 (recognizing the subjective component requires "subjective recklessness" in the face of the serious medical condition), *Burns v. Ashraf*, No. CV JKB-18-03100, 2019 WL 4169838, at *6 (D. Md. Sept. 3, 2019) ("Indeed, the fact that multiple medical professionals declined to order imaging allows for the reasonable inference that the decision was medically sound.").

The Second Amended Complaint is absent of allegations that the Individual Medical Defendants intended to deny the Decedent adequate medical care, nor that they believed they were doing so.[5]   Specifically, there is no indication that the Individual Medical Defendants deemed additional testing or medical imaging to be necessary, nor that they believed the Decedent was suffering from sepsis or a heart attack.   To the contrary, Plaintiffs acknowledge that "it would have been difficult to distinguish the very early symptoms of a heart attack, stroke, diabetic shock, or sepsis from those of Mr. Stevens' other chronic conditions."   (ECF No. 71 ¶ 40).   Nonetheless, they take issue with the Individual Defendants failure to do so, and their allegedly incorrect belief that the Decedent was suffering from withdrawal. *Id.* ¶ 132.

Plaintiffs merely outline their belief that, based on the Decedent's history and symptoms, he should have received an electrocardiogram, chest x-ray, cardiac enzymes, and monitoring. *Id.*

---

[5] *See, e.g.*, *Baughman v. Hickman*, 935 F.3d 302 (5th Cir. 2019) (holding pretrial detainee failed to state plausible claim against doctors for deliberate indifference to his pain based on doctors' alleged conduct in denying him pain medication and access to physical therapy, and doctor's alleged statement that detainee should not expect to receive pain management services akin to those if he was not in jail, absent specific factual allegations that doctors intended to deny detainee adequate medical care).

¶ 83–103.  However, "courts have repeatedly rejected Eighth Amendment claims stemming from allegations that medical practitioners failed to provide diagnostic tests—even in cases where such tests might have proved highly beneficial to the prisoner-plaintiffs or where failure to provide such tests may have constituted medical malpractice."  *Gardener v. United States*, 184 F. Supp. 3d. 175, 186 (D. Md. 2016) (citing cases).

Many acts or omissions that might even establish medical negligence do not meet the requisite Eighth Amendment standard.  *Jackson*, 775 F.3d at 178.  For example, Plaintiffs' contention that the appropriate "standard of care," which was not satisfied here, required "thoroughly exhaust[ing] all opportunities for early detection by performing a full physical and neurological assessment under the supervision of a physician." (ECF No. 71 ¶ 40).  As the Medical Defendants argue, as opposed to stating an actionable claim for deliberate indifference to a medical need, Plaintiffs allege that the medical providers failed to provide the Decedent with his desired level of care, and this situation "demonstrate[s] a classic disagreement regarding treatment." (ECF No. 72-1 at 5, 11).  The Court agrees.

### Adequacy of Care

The Amended Complaint extensively describes the treatment and medical care that the Decedent was provided with while at ACDC, over his four-day stay.[6]  This includes medical orders and treatment provided in relation to the prescribed: Alcohol and Benzodiazepine Withdrawal Treatment (and the corresponding medications), Opiate Withdrawal protocol, and 2,800 calorie

---

[6] *See, e.g.*, *Chapman v. Correct Care Sols.*, No. CV 16-13034, 2017 WL 535333, at *8 (E.D. La. Jan. 19, 2017), *report and recommendation adopted*, 2017 WL 530342 (E.D. La. Feb. 9, 2017) (explaining the copious medical records provided to the Court underscored that Plaintiff's allegation address the nature of his treatment, not the lack thereof).

diabetic diet. (ECF No. 71 ¶¶ 42–44).[7]  Therefore, the question is whether the Individual Defendants provided care that was constitutionally adequate.[8]

Federal courts are reluctant to second medical professionals and constitutionalize medical malpractice claims when a prisoner has received medical treatment.  Deliberate indifference is a "very high standard" because the "Constitution is designed to deal with deprivations of rights, not errors in judgment, even though such errors may have unfortunate consequences."  *Grayson v. Peed*, 195 F.3d 692, 695–96 (4th Cir. 1999).  Accordingly, "[i]n order to establish deliberate indifference on the part of a healthcare provider, a plaintiff must show that the treatment was 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.'"  *Fisher v. Neale*, No. 3:10CV486-HEH, 2011 WL 887615, *4 (E.D. Va. Mar. 14, 2011) (quoting *Miltier*, 896 F.2d at 851).  "Disagreements between an inmate and a physician over the inmate's proper medical care do not state a § 1983 claim unless exceptional circumstances are alleged."  *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985) (citing *Gittlemacker v. Prasse*, 428 F.2d 1, 6 (3d Cir. 1970)).  No exceptional circumstances exist here.

Plaintiffs' claim that more should have been done by way of diagnosis and treatment, and that additional options were available and not pursued in response to an "obvious emergency," on the Decedent's behalf is not viable. (ECF Nos. 71 ¶ 40 & No. 73 at 18).  The Decedent, as a

---

[7] Plaintiffs acknowledge that Mr. Stevens was "prescribed and taking a host of medication to treat or manage his health conditions." (ECF No. 71 ¶ 24).  Nonetheless, Plaintiffs seem to argue that prescribing medication does not constitute treatment.

[8] See also *Williamson v. Correct Care Sols., LLC*, 890 F. Supp. 2d 487, 496 (D.Del. 2012) (deeming inmate's claim not viable under § 1983 where the "inmate receives continuing care, but believes that more should be done by way of diagnosis and treatment and maintains that options available to medical personnel were not pursued on the inmate's behalf."), *Chapman*, 2017 WL 535333, at *8 ("In short, the determinative issue here is not whether the medical care that Plaintiff received was substandard in some respect, whether his medical problems or pain persisted, or whether he was dissatisfied with his care; rather, it is only whether his serious medical needs were met with deliberate indifference by the named Defendants.").

detainee, does not have a constitutional right to choose his provider or his course of treatment so long as his care is adequate. *Langley v. Arresting Officers*, 2020 WL 1548058, at *6 (S.D.W.Va. Mar. 31, 2020) (citing *Lowe*, 797 Fed. App'x at 792), see also *Chandler v. Stover*, 211 F. Supp. 3d 289, 301 (D.D.C. 2016) (citing cases).

Despite not being taken to the hospital, the Decedent was actively monitored and treated, in accordance with his wishes.   As the Defendants note, Mr. Stevens was treated more than fifteen (15) times by seven (7) different medical professionals during his four-day stay at ACDC.  (ECF No. 76 at 5).  The appropriate treatment, including what medications to prescribe, what tests to order, and how to respond to changing medical circumstances, is a question for medical professionals. *United States v. Clawson*, 650 F.3d 530, 538 (4th Cir. 2011) ("The right to treatment is, of course, limited to that which may be provided upon a reasonable cost and time basis and the essential test is one of medical necessity and not simply that which may be considered merely desirable.").  Further, neither party cites, nor can this Court find, any case indicating that a prisoner must be seen by a physician as opposed to another category of health care provider.  *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (recognizing there is no expectation that prisoners will be provided with unqualified access to health care).

Plaintiffs also argue that the Individual Defendants exhibited deliberate indifference when they repeatedly failed to take the Decedent to the hospital while he suffered an on-going medical emergency.  *Id.*   It is true that, "[a] delay in treatment may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain." *Sharpe v. S.C. Dep't Corr.*, 621 Fed. App'x 732 (4th Cir. 2015), *Smith v. Smith,* 589 F.3d 736, 738–39 (4th Cir. 2009) (finding claim of delay in administering prescribed medical treatment stated an Eighth Amendment

claim).  However, as described above, Plaintiffs fail to detail any intent or knowledge by the Individual Defendants to delay the Decedent's treatment.

Further, far from ignoring the Decedent's medical needs, the Second Amended Complaint indicates that the Individual Defendants did everything possible to provide the Decedent with quick and available medical attention.  For example, when Mr. Stevens' pulse rate dropped, his respiration rate increased, his oxygen saturation levels fluctuated, and his CIWA-Ar and COWS were "markedly high," Defendant Logsdon immediately contacted Defendant James Piazza, a Physician's Assistant, and advised him of Mr. Stevens' status.  *Id.* ¶ 91, 98–100.  PA Piazza ordered an increase in Mr. Stevens' prescription for Lisinopril, which he was taking to prevent a heart attack.  *Id.* ¶ 101.  Nurse Logsdon then ensured the Decedent received the additional dose of Lisinopril, and also provided him with 10 ounces of Gatorade, a cool cloth for his forehead and extra blankets to prop up his head.  *Id.* ¶ 102.  Defendant Logsdon offered Mr. Stevens additional medications, but he refused.  *Id.* ¶ 103.  In the light most favorable to Plaintiffs, this does not reflect deliberate indifference.[9]  Even if the Individual Defendants incorrectly were "anchored" solely to the diagnosis of substance withdrawal, "mere negligent" misdiagnosis is not a constitutional violation.  *Estelle*, 429 U.S. at 106 ("[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment."), *Nam Dang v. Sheriff, Seminole Cty.*, 871 F.3d 1272, 1282 (11th Cir. 2017).

---

[9] See, e.g., *Jackson*, 775 F.3d at 178 ("Though hindsight suggests that [the doctor's] treatment decisions may have been mistaken, even gravely so, we agree with the district court that Jackson's claim against [the doctor] is essentially a '[d]isagreement[ ] between an inmate and a physician over the inmate's proper medical care,' and we consistently have found such disagreements to fall short of showing deliberate indifference." (quoting *Wright*, 766 F.2d at 849)), *Wilson v. Wexford Health*, 932 F.3d 513 (7th Cir. 2019) (determining PA was not deliberately indifferent, with respect to state prisoner's inguinal hernia, where PA evaluated prisoner and used her medical judgment to provide a reasonable treatment option, as her usual advice would have been to try therapy and to see prison's medical director if such therapy was ineffective).

Finally, Plaintiffs correlate this case to *J.F. Benton v. Correct Care Solutions*, wherein this Court granted in part, and declined in part, to dismiss § 1983 claims for deliberate indifference against individual medical providers.  No. GJH-16-2177, 2017 WL 881814, \*1 (D. Md. Mar. 2, 2017), (ECF No. 73 at 19–20).  The circumstances present in *Benton*, are distinguishable.  In *Benton*, despite Mrs. Benton being prescribed a variety of medications as part of her detox protocol, the amended complaint identified a number of instances in which Mrs. Benton received sporadic doses of these medications, or none at all.  *Id.* at \*2.  Here, there is no indication that Plaintiff failed to receive his prescribed medications.  Rather, Defendant Manger approved the diabetes protocol issued by Defendant Holler and gave verbal orders that Mr. Stevens would continue taking the physician-approved medication he brought to the Detention Center and at the prescribed doses. (ECF No. 71 ¶ 54).  The Complaint abounds of examples of this protocol being followed and Mr. Stevens being given his prescribed medications, in addition to those prescribed while at ACDC.  In addition, Defendant Logsdon ensured the Decedent received the additional dose of Lisinopril, as prescribed by PA Piazza.  *Id.* ¶ 101.

Of particular import, in *Benton*, the Court noted that a Medical Defendant, Mr. Crawley, observed first-hand that the plaintiff's condition was worsening rather than improving.  *Id.* at \*7. Plaintiffs' allegations in the Second Amended Complaint, however, include copious examples of the Decedent's condition[10] improving and "stabilizing," as opposed to worsening.  *See, e.g.,* (ECF No. 71 ¶ 119) ("Although his CIWA-Ar and COWS scores had gone down . . .."), (¶ 120) ("By late afternoon, Defendant Shutts determined that Mr. Stevens had stabilized.  Her notes indicate that Mr. Stevens' oxygen saturation level was 95%, he was taking his medication without dysphasia, the vomiting had stopped, and he was no longer disoriented."), (¶ 129) ("Although his

---

[10] "[T]he Second Amended Complaint alleges that Mr. Stevens was profoundly ill while at ACDC . . . . " (ECF No. 73 at 17).

blood pressure and pulse rate had dropped, and he could ambulate, he was more anxious and disorientated than he had been a few hours before."), (¶ 133) ("Over the next 12 hours, Mr. Stevens seemed to stabilize somewhat. He was observed throughout the night and did not have distressed breathing, nor was he vomiting.").

Moreover, Plaintiffs do not allege that any of the Decedent's requests, or treatment needs went unaddressed. Whereas, in *Benton*, Mrs. Benton asked if she could go to the hospital, and her request was denied. 2017 WL 881814, at *2. Further, Ms. Benton's oxygen saturation level fell below 92%, at which time providers were instructed to call 911, but no one did. *Id.* Even if some of the Decedent's complaints went unaddressed, potentially with respect to pain in his leg, "an inadvertent failure to provide adequate medical care does not amount to deliberate indifference." *Estelle*, 429 U.S. at 105–06.

As this Court previously recognized, the Amended Complaint may adequately state allegations of medical negligence against the Medical Defendants, but it fails to support a cause of action against them for a constitutional violation. Accordingly, Count I is **DISMISSED**.

### B.  Count II- § 1983 (*Monell* Claim) Liability against Defendant CCS

Typically, § 1983 liability only applies to state actors. However, as pertinent to the case, § 1983 may apply to a private entity, if that entity operates under color of state law, such as here, where a private corporation serves as a prison health care provider. *See, e.g.*, *Conner v. Donelly*, 42 F.3d 220, 224 (4th Cir. 1994) ("[A] private party acts under color of state law where 'the private entity has exercised powers that are 'traditionally the exclusive prerogative of the state.'" (quoting *Blum v. Yaresky*, 457 U.S. 991, 1004 (1982))). Thus, those standards applicable to municipalities apply with full force to Defendant CCS. See *Rodriguez v. Smithfield Packing Co. Inc.*, 338 F.3d 348, 355 (4th Cir. 2003) (recognizing principles of § 1983 liability apply equally to a private

corporation acting under color of state law), *see also Leaders of a Beautiful Struggle v. Baltimore Police Dep't*, No. CV RDB-20-0929, --- F. Supp. 3d ----, 2020 WL 1975380, at *5 (D. Md. Apr. 24, 2020) (same), *Ervin v. Corizon Health*, 2020 U.S. Dist. LEXIS 85229, at *42–43 (D. Md. May 13, 2020) (citing cases).  Accordingly, Correct Care may be held liable under § 1983 only to the extent that it had a custom or policy that caused a violation of the Constitution or laws of the United States.  See *Lytle v. Doycle*, 326 F.3d 463, 471 (4th Cir. 2003), *Rowe*, 2020 U.S. Dist. LEXIS 49825, at *15.

As discussed above, Plaintiffs have not adequately pled that the Decedent suffered a deprivation of his constitutional rights.  Without an underlying constitutional violation, it is "axiomatic that a *Monell* claim cannot lie." *Tserkis v. Baltimore Cty.*, No. ELH-19-202, 2019 WL 4932596, at *4 (D. Md. Oct. 4, 2019) (citing *Young*, 238 F.3d at 579).  Said another way, in the absence of any constitutional violation, there can be no liability on behalf of Defendant CCS. *Anderson v. Caldwell Cty. Sherriff's Office*, 524 Fed. App'x 854, 862 (4th Cir. 2013) ("No actionable claim against supervisors or local governments can exist without a constitutional violation committed by an employee.").  [11]  Accordingly, Count II is **DISMISSED**.

### C.  Maryland Constitutional Claims — Counts III & IV

Count III of the Second Amended Complaint alleges a violation of Article 24 of the Maryland Declaration of Rights against the Individual Defendants.  (ECF No. 71 at 39).  Claims under Article 24 of the Maryland Declaration of Rights are assessed under the same standard as a due process claim pursuant to 42 U.S.C. § 1983.  *See, e.g.*, *Burkley v. Correct Care Sols.*, 2020 U.S. Dist. LEXIS 79854, at *14–15 (D. Md. May 6, 2020), *Bost v. Wexford Health Sources, Inc.*, No. ELH-15-3278, 2018 WL 3539819, at *42 (D. Md. July 23, 2018) ("[T]he analysis under

---

[11] See *Belcher v. Oliver*, 898 F.2d 32, 36 (4th Cir. 1990) ("Because it is clear that there was no constitutional violation, we need not reach the question of whether a municipal policy was responsible for the officers' actions . . ..").

Article 24 is, for all intents and purposes, duplicative of the analysis under the Fourteenth Amendment."), *Krell*, 2019 WL 6131076, at *1 n.2 (evaluating Plaintiff's claims for deliberate indifference under the Fourteenth Amendment and Article 24 simultaneously).   Accordingly, for the same reasons Plaintiffs' claims against the Individual Defendants fail under the Fourteenth Amendment, Plaintiffs cannot maintain a claim under the Maryland Declaration of Rights.  See *Rosa v. Bd. Educ.*, No. 8:11-cv-02873-AW, 2012 WL 3715331, at *6 (D. Md. Aug. 27, 2012).

Similarly, Count IV is filed against CCS under Article 24 of the Maryland Declaration of Rights, often referred to as a "*Longtin* Claim." (ECF No. 71 at 39). "*Longtin* claims are essentially Maryland's version of *Monell* claims." *Rosa*, 2012 WL 3715331, at *9. Thus, to the extent Plaintiffs are simply reasserting their *Monell* claims against Medical Defendants as *Longtin* claims, they fail for the same reasons described above. *See, e.g.*, See McMahon v. County Comm'rs, 2013 WL 2285378, *4 n.6 (D. Md May 21, 2013).  Further, as the deliberate indifference claims do not survive as to any of the Individual Defendants, Plaintiffs allegation of a violation of Article 24 of the Maryland Declaration of Rights, does not remain viable as the corporate entity under the doctrine of respondeat superior.[12]   Accordingly, COUNTS III and IV are **DISMISSED**.

### D.  Maryland State Law Claims — Counts V, VI, VII

Plaintiffs final claims are based on medical negligence under Maryland state law.  Count V asserts a Survival Action for negligence against the Individual Defendants. (ECF No. 71 at 40). Count VI includes a state-law claim for wrongful death against the Individual Defendants. *Id.* at 42.  Plaintiffs' final Count, VII, is brought on behalf of Plaintiff Shelly Stevens and the Estate of

---

[12] *Compare id.*, *with Burkley*, 2020 U.S. Dist. LEXIS 79854, at *25–27 ("[B]ecause the deliberate indifference claims survive as to several of Correct Care's medical professionals, Count III, alleging a violation of Article 24 of the Maryland Declaration of Rights, remains viable as to the corporate entity under the doctrine of *respondeat superior*.").

James Stevens against Defendant CCS for respondeat superior liability for negligence and wrongful death claims against Defendants Holler, Shroyer, Logsdon, Shutts, and Brashear. *Id.*

Defendants argue that these claims should be dismissed because: (1) Plaintiffs' failure to join required parties warrants dismissal of the wrongful death claim; and (2) the dismissal of Plaintiffs' federal law claims warrants dismissal of the pendent state law claims. (ECF No. 72-1 at 19–23). In the Court's view, these issues coincide, and thus will be discussed together.

Under 28 U.S.C. § 1367(c)(3), the court may decline to exercise supplemental jurisdiction over state law claims if the court "has dismissed all claims over which it has original jurisdiction[.]" *Doyle v. Hogan*, 411 F. Supp. 3d 337, 351 (D. Md. 2019) (quoting *Bigg Wolf Disc. Video Movie Sales, Inc. v. Montgomery Cty*, 256 F. Supp. 2d 385, 400–01 (D. Md. 2003)). "In exercising that discretion, courts should consider convenience and fairness to the parties, the existence of any underlying issues of federal policy, comity, and considerations of judicial economy." *Streno v. Shenandoah Univ.*, 278 F. Supp. 3d 924, 932–33 (W.D. Va. 2017) (declining to exercise jurisdiction over remaining state law claims).

All of these factors favor dismissal here. Plaintiffs' remaining claims arise under Maryland state law, and there is no independent basis for federal jurisdiction, as the federal claims in this lawsuit have been dismissed, *i.e.*, the claims over which the Court had original jurisdiction. The remaining issues are ones of state law negligence, as well as Maryland's Wrongful Death statute. Moreover, this case was filed less than a year ago, in November of 2019 (ECF No. 1), and discovery has not commenced. At this early stage in litigation, dismissing this action to be pursued in state court will not waste judicial resources or result in unfairness to either party. In addition, as Plaintiffs acknowledge, they would be able to bring action in state court if the action were dismissed. (ECF No. 73 at 39). Maryland Rule 2–101(b), also known as the Maryland savings

statute, provides that a plaintiff may re-file a claim in state court if a federal district court dismisses the claim for lack of jurisdiction.  Further, as long as "the plaintiff files within thirty days of this Court's order of dismissal, she is exempt from any statutes of limitations." *Ward v. Walker*, 725 F. Supp. 2d 506, 513 (D. Md. 2010).[13]

The contested issue of joinder weighs in favor of this Court declining to exercise supplemental jurisdiction.  *See* (ECF No. 72-1 at 19).  The Medical Defendants argue that Plaintiffs' failure to include the Decedent's children as parties to their state-law claim for wrongful death, Count VI, warrants dismissal of this claim.  *Id.*  When a defendant moves to dismiss a complaint for failure to join a party pursuant to Rule 12(b)(7), a court conducts a two-step inquiry under Rule 19 of the Federal Rules of Civil Procedure, which governs the joinder of parties.  *D.J. Diamond Imports, LLC v. Silverman Consultants, LLC*, No. WMN-11-2027, 2012 WL 163231, *3 (D. Md. Jan. 18, 2012) (citing *Owens–Illinois, Inc. v. Meade*, 186 F.3d 435, 440 (4th Cir. 1999)).  First, a court determines whether a party is necessary to the action.  *Id.*  Under Rule 19(a), a party is necessary if "in that person's absence, the court cannot accord complete relief among existing parties."  Fed. R. Civ. P. 19(a).  Plaintiffs, rightly, acknowledge that the Decedent's two children, Christina and James, qualify as necessary parties.  (ECF No. 73 at 36), *see* Md. Code Ann., Cts. & Jud. Proc. § 3–904(a)(1).  Indeed, if one of a decedent's beneficiaries is absent from a wrongful death lawsuit, Maryland law requires that a judgment rendered in favor of the beneficiary or beneficiaries who did prosecute the suit be vacated.  *Chang-Williams v. Dep't of the Navy*, 766 F. Supp. 2d 604, 629 (D. Md. 2011) (citing cases wherein decedent's child was necessary party to Maryland wrongful death action).

---

[13] Plaintiffs do not discuss how the Maryland Savings Statute impacts their contention that a judgment rendered in Christina's and James' absence would be adequate, as the statute of limitation has expired.  (ECF No. 73 at 38).  See, e.g., *Burgess v. Howard County*, 153 F.3d 719, *4 (4th Cir. 1998) (*unpublished*).

Nonetheless, Plaintiffs argue that joinder is "not feasible" and encourage this Court to proceed to the second step of its inquiry, which requires the court to decide if the party is indispensable under Rule 19(b), and to utilize these factors to weigh if the action should proceed without the Decedent's two children.  (ECF No. 73 at 37).  However, this Court is to proceed to the second aspect of its inquiry when a party is deemed necessary, but inclusion in the action would destroy this Court's subject-matter jurisdiction.  *See, e.g.*, *Owens-Illinois*, 186 F.3d at 440 ("If a party is necessary, it will be ordered into the action.  When a party cannot be joined because its joinder destroys diversity, the court must determine whether the proceeding can continue in its absence, or whether it is indispensable pursuant to Rule 19(b) and the action must be dismissed."), *Ward*, 725 F. Supp. 2d at 511, *D.J.*, 2012 WL 163231, at \*3 ("If the party is necessary but his inclusion in the action would destroy diversity, then the court proceeds to the second part of the inquiry, which requires the court to decide if the party is indispensable under Rule 19(b)).  Here, the issue is not this Court's subject matter jurisdiction, as original jurisdiction was not based on diversity.  Rather, the disagreement is founded the requirements of the Maryland Wrongful Death Statute, and its corresponding notice requirements, which are better considered by a Maryland state court.[14]  In turn, this also weighs in favor of this Court declining to exercise supplemental jurisdiction.[15]

In the exercise of its discretion, the Court declines to exercise supplemental jurisdiction over Plaintiffs' remaining state law claims, and Counts V, VI, and VII are dismissed without

---

[14] While  the question of in whose name the action must be "prosecuted is procedural, and thus governed by federal law, its resolution depends on the underlying substantive law of the state."  *Erie Ins. Co. v. Chugach McKinley, Inc.*, No. DKC 10-2795, 2010 WL 4225631, at \*2 n.3 (D. Md. Oct. 26, 2010) (quoting *Virginia Elec. & Power Co. v. Westinghouse Elec. Corp.*, 485 F.2d 78, 83 (4th Cir. 1973)).

[15] This Court has made no determination as to the necessary parties proceeding forward.

prejudice.[16]  The Court directs Plaintiffs to file state law claims in the appropriate state court within thirty (30) days of this Order of dismissal.

## IV.   <u>CONCLUSION</u>

For the reasons outlined above, the Court will **GRANT** the Medical Defendants' Motion to Dismiss.   (ECF No. 72).   A separate Order shall issue.


July 10, 2020                          _____

                                       J. Mark Coulson
                                       United States Magistrate Judge



---

[16] *Archie v. Nagle & Zaller, P.C.*, 790 Fed. App'x 502, 506 (4th Cir. 2019) (noting Courts have consistently held that a district court has wide latitude in determining whether to retain, remand, or dismiss state law claims pursuant to § 1367(c)).